UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-CR-80208-CANNON

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

RAMON FUERTES,

     Defendant.

_____/

## MOTION TO DISMISS SECOND SUPERSEDING INDICTMENT

COMES NOW, the Defendant, RAMON FUERTES, by and through his undersigned

counsel, and pursuant to Federal Rule of Criminal Procedure 12 as well as the Fifth and Sixth

Amendments to the United States Constitution and Rule 7(c)(1) of the Federal Rules of Criminal

Procedure hereby moves this Court to enter an Order dismissing all four counts in the Second

Superseding Indictment ("SSI"), and as grounds therefore would state as follows:

Count I alleges as follows: COUNT 1 From as early as on or about May 11 , 2023 , through
on or about October 24, 2023 , in Palm Beach County, in the Southern District of Florida, and
elsewhere, the defendant, RAMON FUERTES, a/k/a "Raymond Cortez", an individual required
to register under the Sex Offender Registration and Notification Act (SORNA), who is a sex
offender by reason of a conviction under Federal law, did knowingly fail to register and update a
registration as required by SORNA, in that RAMON FUERTES failed to inform the jurisdiction
he resided within, that is, the Southern District of Florida, that he would be terminating residence
in that jurisdiction and commencing residence in another jurisdiction, and failed to do so prior to
terminating residence in the Southern District of Florida and commencing residence in another
jurisdiction, in violation of Title 18, United States Code, Section 2250(a).

Counts 2-4 allege as follows: COUNTS 2-4 18 U.S.C. § 2250(a) From as early as the date
further specified as to each count below, through on or about October 24, 2023, in Palm Beach
County, in the Southern District of Florida, and elsewhere, the defendant, RAMON FUERTES,
a/k/a "Raymond Cortez", an individual required to register under the Sex Offender Registration
and Notification Act (SORNA), who is a sex offender by reason of a conviction under federal law,
did knowingly fail to register and update a registration as required by SORNA, in that RAMON

1

FUERTES failed to register an electronic email address and remote communication identifier information, a designation used for self-identification and routing in internet communications, as further specified as to each count below:

| Count | Approximate Partially Redacted Email Address or Creation Date Internet Identifier |
|---|---|
| 2 | January 21, 2023 ramonfuertes[XX]@gmail.com |
| 3 | May 21, 2023 Rayrayblessed [XX]@gmaiI.com |
| 4 | May 24, 2023 https://www.facebook.com/ profile.php?id=1 000921647582[XX] |

In violation of Title 18, United States Code, Section 2250(a).

Count 1 of the SSI alleges that Mr. Fuertes, an individual who was required to register under the Sex Offender Registration Act (SORNA) knowingly failed to do so, in that he did not inform the proper authorities in Florida, where he was residing that he would be terminating his residence in Florida and commencing residence in another jurisdiction (Georgia), and that he failed to do so prior to terminating his residence in Florida and commencing his Georgia residence.

The remaining 3 counts allege that Mr. Fuertes failed to register an electronic email address and remote communication identifier information, which are designated and used for self-identification and routing in internet communication. Specifically, it is alleged that Mr. Fuertes did not register 2 email accounts and 1 Facebook account.

Federal Rule of Criminal Procedure 12(b)(3)(B) provides that "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense."

SORNA contains two statutory sections applicable to this case. Under 42 U.S.C. § 16913, a sex offender is required to register, and to keep registration current, in each jurisdiction where the offender resides, works, or is a student, and he must appear in person and provide the

information required for the sex-offender registry within three business days of a change of name, residence, employment or student status.  42 U.S.C. § 16913(a), (c).  Section 2250 imposes criminal liability on two categories of persons who knowingly fail to adhere to SORNA's registration requirements: any person who is a sex offender due to a federal conviction, § 2250(a)(2)(A); and any other person required to register under SORNA who travels in interstate or foreign commerce.  § 2250(a)(2)(B).  *Carr v. United States,* 560 U.S. 438, 451 *as cited in United States v. Rivers*, No. 14-10143 (11th Cir. Oct. 15, 2014).

Mr. Fuertes seeks dismissal of the SSI on constitutional grounds (Separation of Powers, Due Process and First Amendment) as well as that the Government lacks a sufficient factual basis for invoking the jurisdiction of the Federal court.

**Non-Delegation Doctrine**

Under the non-delegation doctrine, "Congress may not constitutionally delegate its legislative power to another branch of Government."  *Touby v. United States*, 500 U.S. 160, 165 (1991), *as cited in U.S. v. Benevento*, 633 F. Supp.2d 1170 (D. Nev. 2009).   The SORNA statute specially allocates to the Attorney General the broad authority to "issue guidelines and regulations" to interpret SORNA.

34 U.S.C. § 20912 provides that "each jurisdiction shall maintain a jurisdiction-wide sex offender registry conforming to the requirements of this subchapter." Id. (a). It states that the "Attorney General shall issue guidelines and regulations to interpret and implement this subchapter." Id. (b). 34 U.S.C. § 20914 states that a sex offender "shall provide to the appropriate official for inclusion in the sex offender registry" a series of specific pieces of information, such as his name, social security number, residential address, etc. Id. (a)(1-6). It also requires "[i]nformation relating to intended travel of the sex offender outside the United States, including any anticipated dates and places of departure, arrival, or return, carrier and flight numbers for air travel, destination country and address or other contact information therein, means and purpose of travel, and any other itinerary or other travel-related information required by the Attorney General." Id. (a)(7). The

3

statute finally requires an offender to supply "[a]ny other information required by the Attorney General." Id. (a)(8). Plaintiffs challenge the specific delegations codified at 34 U.S.C. §§ 20912(b), 20194(a)(7) and 20914(a)(8). (See Motion at 10-11.)

This authority is granted without conveying any textual limitations. *Cf. Loving v. United States,* 517 U.S. 748, 768 (1996) (delegations whereby the Executive or an independent agency defines by regulation what conduct will be criminal, so long as Congress makes the violation of regulations a criminal offense and fixes the punishment, and the regulations 'confin[e] themselves within the field covered  by the statute.'"

Congress enacted the Walsh Act on July 27, 2006. Title 1 of the Walsh Act contains SORNA and the federal failure to register as a sex offender statute. See 18 U.S.C. § 2250(a). The stated purpose of the Walsh Act is "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child victims." P.L. 109-248. The stated purpose of SORNA is "to protect the public from sex offenders and offenders against children" by establishing "a comprehensive national system" for the registration of sex offenders. 42 U.S.C. § 16901. "SORNA is essentially an effort by Congress to close the loopholes in previous sex offender registration legislation and to standardize registration across the states." *United States v. Ditomasso*, 552 F.Supp.2d 233 (D.R.I.2008). SORNA has provisions that apply to states and other provisions that apply to individuals. The Walsh Act applies to each state, the District of Columbia, native American tribal territories, and other United States territories. See § 16911(10), defining jurisdiction for purposes of the SORNA. Each jurisdiction has until July 27, 2009 to substantially comply with the requirements of SORNA or lose part of its federal funding. 42 U.S.C. §§ 16924(a), 16925(a). SORNA requires states to implement sex offender registries which must include standard information and be compatible with a national electronic data base. 42 U.S.C. §§ 16912, 16918, 16919. In addition to establishing a national sex offender registration system, SORNA requires sex offenders to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). SORNA defines the term "sex offender" as "an individual who was convicted of a sex offense" and classifies all sex offenders into three different categories. 42 U.S.C. § 16911(1)-(4). A "sex offense" is "a criminal offense that has an element involving a sexual act or sexual contact with another." Id., § 16911(5)(A)(i). A sex offender must initially register before completing a period of imprisonment, or not later than three business days after being sentenced if not sentenced to imprisonment. 42 U.S.C. § 16913(b). Under § 16913(b), a sex

4

offender must initially register: (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or (2) not later than 3 business days after. Thereafter, a sex offender is required to keep his or her registration current by appearing in person in at least one jurisdiction in which the sex offender is required to register and informing the registering agency of any changes in personal information, such as a change of name, residence, or employment status. Id. at § 16913(c). In the event of a change of name, residence, employment, or student status, the sex offender must appear in person within three business days of the change in at least one jurisdiction where the person resides, works, or is a student to update his registration information. 42 U.S.C. § 16913(c). Section 16913(d) of SORNA delegates authority to the Attorney General of the United States to specify the applicability of SORNA's requirements to sex offenders convicted before July 27, 2006 when SORNA took effect or its implementation in a particular jurisdiction and also to prescribe Page 1177 rules for the registration of any sex offender unable to comply with the initial registration provisions of SORNA. On February 28, 2007, the Attorney General promulgated an interim rule applying SORNA to all sex offenders regardless of when they were convicted. See Applicability of the Sex Offender Registration and Notification Act, 72 Fed.Reg. 8894 (Feb. 28, 2007) (codified at 28 C.F.R. § 72 (2007)). On May 30, 2007, the Department of Justice issued proposed guidelines for interpreting SORNA, ("SMART Guidelines"), 72 Fed.Reg. 30,210 (May 30, 2007). 28 C.F.R. § 72.3. SORNA also created a new federal offense for failure to register, codified at 18 U.S.C. § 2250(a), which made failure to register as a sex offender a felony and punishable with a maximum penalty of up to ten years imprisonment and a $250,000 fine. Section 2250(a) supersedes the Jacob Wetterling Act, which will be repealed three years after SORNA's effective date. 42 U.S.C. § 14071, P.L. 109-248, Title I, § 129, 120 Stat. 600 (2006).  See *Benevento,* 633 F. Supp.2d at 1176.

In *Chevron U.S.A., Inc.  v. Natural Resources Defense Council, Inc., et. al*, 467

U.S. 837 (1984), the Supreme Court upheld an agency's construction of a statute regarding

the EPA's definition of a term as a permissible construction of the statute.  More recently,

however, the Supreme Court has granted certiorari review in *Loper Bright Enterprises, Inc.*

*v. Raimondo*, 45 F.4[th] 359 (D.C. Cir. 2022) a case involving a challenge to the National

Marine Fisheries Service promulgation of a rule requiring industry to fund at-sea

monitoring programs requiring fisherman to pay the wages of federally mandated monitors

at a cost of $700.00 per day.  Thus, if *Loper Bright Enterprises, Inc*. overturns the broad

permission granted to agencies under <u>Chevron</u>, infra, to conduct more broad administrative power, this will provide strong support for finding that the authority granted to the Attorney General to establish rules under SORNA violates the nondelegation doctrine and the separation of powers between the three branches of government under the Constitution.

Admittedly in *Gundy v. United States*, 139 S. Ct. 2116 (2019), the Court held that SORNA does not run afoul of the nondelegation doctrine.1   However, three dissenting Justices found that Congress's decision to allow the Attorney General to write the provisions of SORNA amounted to placing too much authority in the Attorney General, in writing the contents of a criminal statute in violation of the nondelegation doctrine. Further, a fourth Justice, Justice Alito in a concurring opinion indicated a willingness to reconsider the issue if a majority of the Court were willing to reconsider the approach taken by the Court. 2 *See Gundy*, 139 S. Ct at 2130.   *See also United States v. Wylie*, No. 18-13780 (11th Cir. Jul 29, 2019)(Rejecting nondelegation challenge to SORNA).

Thus, although current law does not provide precedent for declaring SORNA to be a violation of the nondelegation doctrine, Mr. Fuertes raises this issue in order to preserve it for any appeal or in the event of an intervening change of law.   *Compare United States v. Wood*, No. 19-1477 (10th Cir. Jul 29, 2020).

**<u>This Court lacks jurisdiction because the Government seeks to invoke Federal Court jurisdiction by alleging that the defendant failed to inform Florida that he</u>**

---

1 Gundy addressed 34 U.S.C. § 20913(d) which provides, "The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdictions, and to prescribe rules for the registration for any such sex offenders and for other categories of sex offenders who are unable to comply with [initial registration requirements.] Id. at 2121, as cited in John Doe , et. al. v. U.S. Department of Justice, et. al EDCV 22-855 JGB (SPx) January 13, 2023.

2 Justice Alito wrote, "[i]f a majority of this Court were willing to reconsider the approach we have taken for the past 84 years, I would support the effort.  But because a majority is not willing to do that, it would be freakish to single out the provision here for special treatment."  Id. at 2131.

**would be terminating his residence in Florida and commencing residence in Georgia, thereby crossing state lines and affecting interstate commerce,  where SORNA does not imposes a requirement to inform and the facts do not show any failure to inform the authorities in Florida that he would be terminating his residence at the time he left Florida and went  to Georgia**

Title 18, United States Code. Section 2250. Failure to register [in pertinent part]

(a) In General.-Whoever-

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act; shall be fined under this title or imprisoned not more than 10 years, or both.

(b) Affirmative Defense.-In a prosecution for a violation under subsection (a), it is an affirmative defense that-

(1) uncontrollable circumstances prevented the individual from complying;

(2) the individual did not contribute to the creation of such circumstances in reckless disregard of the requirement to comply; and

(3) the individual complied as soon as such circumstances ceased to exist.

SORNA defines a "sex offender" as "an individual who was convicted of a sex offense." 34 U.S.C. § 20911(1). The Act requires a sex offender to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 34 U.S.C. § 20913(a).

To keep his registration current, "[a] sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved . . . and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry." Id. § 20913(c). Under SORNA, a "sex offender registry"

is a "registry of sex offenders, and a notification program, maintained by a jurisdiction," which includes each state. Id. § 20911(9), (10).

Pursuant to 18 U.S.C. § 2250, it is a crime for a person who is "required to register" under SORNA to "travel in interstate or foreign commerce" and "knowingly fail[] to register or update a registration as required by" SORNA. 18 U.S.C. § 2250(a); see also *Gundy*, 139 S. Ct. at 2121 (2019) ("Any person required to register under SORNA who knowingly fails to do so (and who travels in interstate commerce) may be imprisoned for up to ten years.").

Thus, a defendant is subject to SORNA's provisions if (i) he or she has a state law sex offense requiring registration as a sex offender; (ii) then travels in interstate commerce; and (iii) knowingly fails to register or update his or her registration as required by state law.  *See United States v. LeTourneau*, 534 F. Supp.2d 718, 720 (S.D. Tex. 2008) (citing 18 U.S.C. §2250(a), *as cited in United States v. Shepherd*, 880 F.3d 734 (5th Cir. 2018).  The statute also establishes an affirmative defense, in which a defendant would be found not guilty at trial if he proves that "(1) uncontrollable circumstances prevented the individual from complying; (2) the individual did not contribute to the creation of such circumstances in reckless disregard of the requirement to comply; and (3) the individual complied as soon as such circumstances ceased to exist." Id. § 2250(c).

Thus, in order for this case to properly be under the jurisdiction of the Federal court, the Government must have evidence of, *inter alia*, that Mr. Fuertes knowingly failed to register or update his registration as required by law.  (emphasis added)

The Government seeks to invoke the jurisdiction of the Federal court by alleging in the indictment that Mr. Fuertes "failed to inform the jurisdiction he resided within, that is, the Southern

District of Florida, that he would be terminating residence in that jurisdiction and commencing residence in another jurisdiction."

Discovery in the case establishes otherwise.   On June 13, 2024, Mr. Fuertes called and notified the Palm Beach County Sheriff's Office that he had left Florida and was in Georgia attending to a family emergency.   The call was recorded on voicemail.   During the call, he asked that a representative from the Palm Beach County Sheriff's Office ("PBSO") sex offender unit call him to clarify any impact being in Georgia would have on his registration requirements.   He advised that he was considering staying there and wanted to discuss this with them.   There are no return calls from PBSO to Mr. Fuertes that defense counsel is aware of, clarifying the matter for Mr. Fuertes, even though he left a phone number where he could be reached.   During this time, Mr. Fuertes also established contact with authorities in the sex offender registration unit in DeKalb County, Georgia regarding his sex offender registration.   He reported to the office twice and also inquired about the registration requirements if he decided to stay in Georgia.   Phone records establish that while communicating with the Georgia sex offender authorities, he provided numerous physical addresses where he proposed staying, all of which were rejected by the Georgia authorities as noncompliant with the sex offender registry laws in Georgia.   However, independent investigation by the defense, reveals that Mr. Fuertes was wrongly informed about some of the addresses that he provided complying with Georgia registry requirements.   In fact, some do comply with Georgia registry requirements.

Mr. Fuertes also sought information from the Georgia authorities about registering as homeless and was advised that he could not do so.   This too ran contrary to Georgia sex offender rules and regulations which provide very specific rules and regulations for registering as homeless.

Over the course of the ensuing weeks, Mr. Fuertes continued to remain in contact with the authorities in Georgia, notifying them of his whereabouts and employment status. Ultimately, the Georgia authorities refused to register him telling him that he had to return to Florida.3  A warrant was subsequently issued by the State of Florida for failure to register.

In addition to alleging that Mr. Fuertes failed to notify the Florida authorities before leaving for Georgia, count 1 of the SSI also alleges that his failure to notify the Florida authorities occurred prior to "terminating" residence in Florida and "commencing" residence in Georgia. This appears to be an effort by the Government to suggest that when Mr. Fuertes left Florida to attend to a family matter in Georgia, that he was thereby "terminating" a residence in Florida and "commencing" one in Georgia. This allegation in the SSI, which is unsupportable in fact or law, is another means by which the Government seeks to invoke the jurisdiction of the Federal court.4

The Government appears to be taking the position that a sex offender must provide, as part of his registration, the address of each residence at which the sex offender resides or will reside. § 16914(a)(3).  And accordingly, the Government argues that SORNA thereby contemplates the possibility of an offender updating his registration before actually moving. This argument fails. In *Nichols v. United States*, 136 S. Ct. 1113 (2016), the Court clarified that 16914(a) merely lists the pieces of information that a sex offender must provide if and when he updates his registration; saying nothing about any obligation for registration in the first place.

---

3 Mr. Fuertes recalls being told by the Georgia authorities, that he needed to return to Florida because "they had it out for him."
4 Mr. Fuertes is currently charges with failure to register in Florida state court, for conduct involving the same time frame and alleged factual basis.

Further, SORNA requires sex offenders to register "and keep the registration current, in each jurisdiction where the offender resides." 34 U.S.C. § 20913. "Resides" is defined as "the location of the individual's home or other place where the individual habitually lives." Id. § 20911(13).

Accordingly, Mr. Fuertes's conduct did not amount to a knowing failing to inform the authorities in Florida that he would be terminating residence in Florida and commencing residence in Georgia. Thus, this Court lacks jurisdiction to hear the claim that Mr. Fuertes knowingly failed to register and/or update his registration as required by SORNA, where no such requirement to update his registration in Florida or Georgia, as alleged in count 1 of the Indictment existed. Thus, count I must be dismissed.

### Counts 2-4 which require registrants to provide law enforcement with their remote communication identifiers violates the First Amendment.

As stated above, counts 2-4 of the SSI allege that RAMON FUERTES failed to register an electronic email address and remote communication identifier information, a designation used for self-identification and routing in internet communications.

The requirement under SORNA, as codified in Title 18, United States Code, Section 2250(a) and charged in counts 2-4 of the SSI violate the First Amendment. Under the Rules implemented as part of SORNA, a remote communication identifier is defined as "[a]ll designations the sex offender uses for purposes of routing or self-identification in internet or telephonic communications or postings, including email addresses and telephone numbers." 86 F.R. at 69885. Registrants, under the Rule, are required to "report within three business days to his residence jurisdiction any change in remote communication identifiers information." Id. at 69886. See *John Doe, et. al. v. U.S. Department of Justice, et. al.,* Case No. EDCV 22-855 JGB (SPx), January 13, 2023.

11

Under 34 U.S.C. § 20916 (e)(2), "internet identifiers" are defined as "electronic mail addresses and other designations used for self-identification or routing in Internet communication or posting."

In *Packingham v. North Carolina*, 137 S. Ct. 1730 the Court found that "[a] fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more." *Id.* at 1735. The First Amendment protects against laws "abridging the freedom of speech." In *Cornelio v. State*, 3:19-cv-1240 (JAM) (D. Conn. Sep 14, 2023) the court found that the same type of disclosure law at issue here violated the right to free speech under the First Amendment. The law at issue, much like the one in the instant case, compelled disclosure to the state police all email addresses, social media accounts, and any other Internet communication identifiers.

First Amendment precedent establishes that in order to allow for such a burden on free speech, the State must show that the law advances an important government interest that is unrelated to the suppression of free speech. It must also show that the law does not burden substantially more speech than necessary to further the government's interest. In *Cornelio v. Connecticut*, 32 F.4th 160 (2d Cir. 2022), the court found that "[t]he State [] not only failed to show that the disclosure law advances an important government interest, but it also failed to show that it does not burden substantially more speech than necessary.

Thus, the question presented is whether the law at issue advances an important governmental interest unrelated to the suppression of free speech. It also must be shown that the disclosure law does not burden more speech than is necessary to advance its

12

interest.

Although the government has an interest in maintaining a registry system to ensure that those who would seek to use the internet as a means to prey or otherwise cause harm to children or others, can be tracked and ultimately held accountable for any misdeeds, when such a system entails an infringement on the First Amendment, it cannot overly burden the First Amendment.

Here, there is no showing that requiring disclosure of the email addresses and internet identifiers actually deters illicit sexual activity online.  Further, the information disclosed leads to disclosure of how the sex offender registrant identifies themselves, (whether by true name, nickname or pseudonym) on a myriad of internet platforms such as Amazon.com, the Washing Post, and webMD that have comment functions, which allow for back-and-forth exchanges between users, thereby burdening more speech than necessary.  Id.  Further, the court noted that "[t]he disclosure requirement also plausibly appears to be overbroad because it applies to all persons subject to the sex offender registration law, including registrants who have never engaged in the sort of illicit online activity that the government seeks to deter."  This is the case with Mr. Fuertes.  See *Doe v. Nebraska*, 898 F.Supp. 2d 1086, 112 (D. Neb. 2012(the court held that requiring sex offenders to disclose their internet identifiers was unconstitutional on First Amendment and other grounds).

Other courts have rejected First Amendment challenges by sex offenders to internet identifiers.  For example, in *Ex Parte Odom*, 570 S.W. 3d 900 (Tex. App. 2018), the court rejected a challenge that required convicted sex offenders to disclose and periodically

update information regarding their internet identifiers.  The Texas law at issue required registrants to report any change or establishment of new online identifiers.  The court found that the First Amendment permitted States to enact laws, narrowly tailored that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor." Id, at 915.

Mr. Fuertes underlying charges did not involve any internet sex-based crimes as defense counsel understands it.  Further, the nature of the disclosure here leads to the information being disseminated in ways that ultimately have a chilling effect on free speech. Therefore, counts 2-4 of the SSI alleging that RAMON FUERTES failed to register an electronic email address and remote communication identifier information, a designation used for self-identification and routing in internet communications must be dismissed as violating the First Amendment.

### Title 18 U.S.C, Section 2250(a) violates the Due Process Clause of the United States Constitution by alleviating the Government from having to prove that the defendant acted with *mens rea*

"[T]o establish a criminal violation of" Section 2250(a), "the government [must] show (1) that [the defendant] was required to register under 42 U.S.C. § 16913(a) as a sex offender ...; (2) that he was convicted of an offense [under the laws enumerated in Section 2250(a)(2)(A) ] that made him a sex offender, or that he traveled in interstate [or foreign] commerce; and (3) that he 'knowingly' failed to register [or update his registration] as required by § 16913(a)."  See generally *Carr v. United States*, 560 U.S. 438, 451, 130 S. Ct. 2229, 176 L.Ed.2d 1152 (2010) ( "Section 2250 imposes criminal liability on two categories of persons who fail to adhere to SORNA's registration requirements: any person who is a sex offender by reason of a conviction under Federal

law ..., the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States, and any other person required to register under SORNA who travels in interstate or foreign commerce ...."

The statute establishes an affirmative defense, if at trial a defendant can prove that "(1) uncontrollable circumstances prevented the individual from complying; (2) the individual did not contribute to the creation of such circumstances in reckless disregard of the requirement to comply; and (3) the individual complied as soon as such circumstances ceased to exist."

Under 18 U.S.C. §2250, the issue of whether the defendant registered, *"as required,"* is an essential element of the crime.   (Emphasis added.)  A bedrock principle of criminal jurisprudence is that the government bears the burden of proof on all the essential elements of a crime to be proven beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 364 (1970).   "In the criminal law, both a culpable *mens rea* and a criminal *actus reus* are generally required for an offense to occur." *United States v. Apfelbaum*, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980).

As described by the District Court Judge, in *Doe et. al. v U.S. Department of Justice*, *Infra*, *mens rea* refers to the mental state of the accused (knowingly acting) and *actus reas* refers to acts taken or not taken to register as required by law.  Admittedly *Doe* involved a challenge to SORNA by Plaintiff's seeking declaratory relief because their sex offense convictions had been overturned, making them ineligible to register on the California sex offender register but still subject to SORNA registration and thus in jeopardy of Federal prosecution, which is a different issue than presented in the case at bar involving whether Mr. Fuertes acted indifferently to the registration requirements under SORNA.  However, the same due process concerns are implicated.  That is, whether there is an intent to comply with the law as required.  Although it may not have been

impossible for Mr. Fuertes to register as required as it was in *Doe*, where his defense is focused less on the question of what his knowledge of his legal obligations under SORNA were, and more on whether the acts taken demonstrate a reasonable doubt as to whether he intended to evade his legal obligations,  the *mens rea* showing intent should fall squarely on the shoulders of the Government.   However, as written  U.S.C. §2250(a) obfuscates the Government's burden to prove intent or *mens rea*, and it should not. Thus all 4 four offenses in the SSI, charged under §2250(a) must be dismissed pursuant to the due process clause of the United States constitution.

WHEREFORE, the Defendant, RAMON FUERTES, respectfully requests this Honorable Court enter an Order Dismissing all Counts.

I HEREBY CERTIFY that on March 1, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

Respectfully submitted,


By: */s/ Christopher A. Haddad*
CHRISTOPHER A. HADDAD
319 Clematis Street, Suite 812
West Palm Beach, FL  33401
Telephone:  (561) 832-1126
chris@chrishaddad.com
Fla. Bar No. 0879592

16